**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2373
_____

SAMEH SAAD SULTAN BOULES,
Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
Agency No. A094 046 261
Immigration Judge:  Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 21, 2010
Before: <u>Chief</u> <u>Judge</u> SCIRICA, SMITH and WEIS, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 23, 2010)
_____

OPINION
_____

PER CURIAM.

Sameh Saad Sultan Boules petitions for review of an order of the Board of

Immigration Appeals ("BIA"), which dismissed his appeal from an Immigration Judge's

("IJ") removal order.  We will deny the petition for review.

1

Boules, a native and citizen of Egypt, entered the United States in 2005 on a visitor's visa and overstayed. In removal proceedings, he sought asylum and related relief, based on his allegation that he had been and would be persecuted in Egypt as a Coptic Christian. His evidence of past persecution relied primarily on two incidents that were described differently in his asylum application and his testimony. Boules testified that in June 2000 when he was attending pharmacy college, a professor questioned him during an oral examination about the Qur'an. When he could not answer the questions, his professor shoved him against a wall, where he hit his head and was knocked out. A.R. 99-100. His friends took him to the hospital, and he filed a police report, but nothing was done to the professor. A.R. 102. On cross-examination, he was asked why the medical report from that date did not mention any head injury. He responded that there was no injury to his head, only to his chest. A.R. 119.

In September 2005, he was preparing the floors of a store he and his family purchased, when four people came in, dressed as men from the Muslim Brotherhood. They told him that Christians did not have the right to be in business in that area, and they hit him on the arm and the head with a metal bar. They told him if he tried to open the business they would kill him. A.R. 108-09. His father was also threatened with death if the store was opened. A.R. 113. He reported the incident to the police, but the police said they could do nothing, because an election was coming up and they did not want to have a Christian-Muslim controversy. A.R. 111-12. Boules went to a hospital where he

2

was treated for injuries to his arm. A.R. 110-11. He also testified that he had a swollen head from the incident. A.R. 125. On cross-examination, Boules was asked whether his head was ever cut. He said it was not, but his initial asylum application stated that he had "a deep scar on my head that I will have to live with for the rest of my life." A.R. 124-26, 249. When asked about the discrepancy, Boules said the application must have contained a bad translation. A.R. 126. Boules also testified that he expected to receive a teaching position based on having the sixth highest grade in his pharmacy college graduating class, as normally the top ten graduates were awarded a position. He believed he was not offered a position because he is a Christian. A.R. 105.

The IJ found that Boules was not credible, based on inconsistencies between his application (including his statement and medical reports) and his testimony. The IJ noted that with regard to the 2005 incident, Boules' application stated that he suffered a concussion of the brain with an exposed wound of the scalp, and that he received stitches for the wound. Although a medical report dated from that time also indicates "an exposed wound of the scalp," Boules testified that he did not ever cut his head. The IJ also noted that Boules' hair was very short, and that he could not see any noticeable scar. The IJ also noted discrepancies regarding the 2000 incident–Boules testified that he was knocked unconscious, but the medical report does not indicate that he was knocked unconscious or that he received any head injury. The IJ also noted that the background information submitted did not show a large problem with persecution of

3

Coptic Christians in Egypt.

The BIA found the IJ's adverse credibility determination was not clearly erroneous, citing the discrepancies regarding the 2005 incident. Boules filed a timely, counseled petition for review.

This Court reviews adverse credibility determinations for substantial evidence. Kaita v. Att'y Gen., 522 F.3d 288, 296 (3d Cir. 2008). An adverse credibility finding must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." Berishaj v. Ashcroft, 378 F.3d 314, 322 (3d Cir.2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). Pursuant to 8 U.S.C. § 1158(b)(1)(B)(iii), an adverse credibility determination may be based on "the consistency of [the applicant's] statements with other evidence of record." The written application and medical report submitted by Boule both describe an "open wound" to his scalp. Boule testified, however, that his head had never been cut. This inconsistency calls into question the authenticity of the medical evidence he submitted, and concerns an incident that was essential to Boules' asylum claim. Considering this inconsistency and the other inconsistencies found in the record, we find that the adverse credibility finding is supported by substantial evidence.[1]

For the foregoing reasons, the petition for review will be denied.

---

[1] Because Boules' withholding of removal and CAT claims are based on the same evidence as his asylum claim, the adverse credibility finding precludes all the relief sought.